# CHARLESTON.

## VERLANDER v. HARVEY.

Submitted January 19, 1892.—Decided April 2, 1892.

1. DOWER.

At common-law, when the husband was once seised during the coverture in such manner that the wife's inchoate or contingent right of dower attached, it was not in the power of the husband to defeat it by any act in the nature of an alienation or charge. The wife upon the death of the husband was entitled to claim dower from the alienee, and the dower was to be assigned her *in specie*, in the same manner as she would have recovered against the heir of the husband, had the latter died seised, except as to damages. She was not entitled to any damages unless the husband died seised.

2. DOWER—CONSTRUCTION OF STATUTE.

Sections 10, 11, and 12 of chapter 65 of our Code on dower, jointure and curtesy construed, and *held*, that where the husband has sold realty in his lifetime, which was subject to dower, the value of the widow's dower is to be computed as against the alienee at the date of her recovery, if in kind, with lawful interest from her suit; but she can not insist that her dower shall be assigned *in specie*, nor can she refuse to recive the equivalent annuity, or a gross sum in lieu thereof. the option in this matter being lodged by the statute exclusively with the alienee; and when, under section 12, the alienee elects to pay an annuity, or a gross sum in lieu thereof, the value of the dower is computed as of the time of the alienation.

3. DOWER.

Where the widow brings her suit in chancery against the alienee, and the prayer of her bill is that "her dower in the said real estate be assigned, set out, and allotted to her, or a gross sum in lieu thereof given her," and the answer of the alienee denies that the plaintiff is entitled to a sum in gross for her dower-interest, if she has one, and avers, that, if she is entitled to anything at all, she is entitled to one third interest in the realty, which the defendant is willing may be alloted to her, and there is no replication to the answer, it is error in the Court to commute the dower against the wishes and election of the alienee, and to decree to the widow a gross sum, and charge the same as a lien upon the whole of the real estate of the husband which had been so aliened in his lifetime.

*Vinson & McDonald* for appellant cited 11 Gratt. 441 ; 2 Scrib. Dow. 654 ; 7 Cr. 370 ; 26 W. Va. 1 ; 2 Min. Inst (2nd Ed.) 162 (3 K.); *Id.* 158 (2 M. 1st. 2nd, 3d.); Code c. 65, s. 12.

*Campbell & Holt* for appellee cited 77 Va. 70.

LUCAS, PRESIDENT :

This was an appeal from a decree rendered by the Circuit Court of Cabell county in a suit in which Annie M. C. Verlander was plaintiff and Imogene H. Harvey, was defendant. J. W. Verlander, the husband of the appellee, was during his lifetime and the coverture seized of an estate in fee in the vacant and unimproved lot No. 10, block 155, of the city of Huntington. This lot was sold under the decree of the Circuit Court, and subjected to the debts of the said Verlander. The appellant, Harvey, became the purchaser and received a deed therefor. After Verlander's death, his widow, the appellee and plaintiff below, filed a bill to enforce her dower in the lot. She alleged that she was willing to take a sum in gross or dower in kind, and the appellant answered admitting her right to dower but denying her right to a gross sum and asking an assignment in kind. The Court, however, decreed that she was entitled to a gross sum, ascertained its amount and directed the sale of the lot in satisfaction thereof, unless the appellant should pay off the charge by a day named. From this decree the owner of the lot appeals.

The only question involved in this controversy is the construction of section 12, c. 65, Code, relating to dower. In order to understand the question thus involved, it is advisable to quote said section, and the two sections immediately preceding it, as follows :

"(10) A widow having a right of dower in any real estate may recover the said dower, and damages for its being withheld, by such remedy at law as would lie on behalf of a tenant for life having a right of entry, or by a bill in equity, where the case is such that a bill would now lie for such dower.

"(11) In every such case, a recovery of dower in such real

estate in kind shall be of a third of the estate, as it is when the recovery is had. Against the heirs or devisees of the husband or their assigns, the damages shall be for such time after the husband's death as they have withheld the dower, not exceeding five years before the suit is commenced. Against one claiming under an alienation of the husband, or under a sale made by the judgment or decree of a court in his lifetime, the damages shall be from the commencement of the suit against such claimant. In either case they shall be to the time of the recovery. And if, after suit brought, the widow or the tenant die before such recovery of damages, the same may be recovered by her personal representative, or against his.

"(12) The two preceding sections are subject to this qualification : that any person claiming under an alienation made by the husband, or under a sale made in pursuance of the judgment or decree of a court, in his lifetime, may pay to the widow during her life lawful interest from the time the demand is made upon him by the widow or her agent, for her dower in the land, or one third of the value thereof at the time of such alienation or sale, or he may pay her a gross sum in lieu thereof, to be computed upon the principle hereinafter provided; and in either case the payment so made shall be a full discharge and satisfaction of the claim of the widow for dower in the real estate so alienated or sold."

At common-law, when the husband was once seised during the coverture in such manner, that the wife's inchoate or contingent right of dower attached, it was not in the power of the husband to defeat it by any act in the nature of an alienation or charge. The wife upon the death of the husband was entitled to claim dower from the alienee, if she survived her husband, and the dower was to be assigned to her *in kind* in the same manner as she would have recovered against the heir of the husband, had the latter died seised, except as to damages. She was not entitled to any damages, unless the husband died *seised.* 1 Scrib. Dower, c. 29, §§ 1, 6 and notes.

This view of the common-law, however, did not seem to prevail in Virginia, if we are to judge from the leading case

of *Tod* v. *Baylor*, 4 Leigh, 498.    In that case the syllabus states :

"Upon a bill in equity by a widow against an alienee of her husband for dower of lands aliened by the husband in his lifetime, the widow is dowable of the lands as of the value thereof at the time of alienation, not at the time of the assignment of dower; she is entitled to no advantage from enhancement of the value, either by improvements made by the alienee, or from general rise in value, or from any cause whatever.    Upon a bill in equity by a widow against an alienee of the husband for dower of lands sold, she is not entitled to an account of profits from the death of the husband, but only from the date of the subpœna in the cause; otherwise upon a bill against the heir."

The former sentence of this quotation, if it relate to dower in kind, though apparently based upon the common-law, does not accord with it, which required that the widow should be assigned *dower in kind*, if she so demanded, or, if she consented to a commutation, that the value should be ascertained by recurring to the period of the husband's death.    Subsequently, however, the legislature took a different view, and in Code 1849, c. 110, s. 12, the following provision was inserted :

"(12) The two preceding sections are subject to this qualification ; that, upon the application of one claiming under an alienation made by the husband in his lifetime, a court of equity may grant him relief from such recovery (of dower) on the terms of his paying to the widow, during her life, lawful interest from the commencement of her suit on one third of the value, at the husband's death, of the real estate so aliened, deducting the value of such permanent improvement then existing as may have been made after the alienation by the alienee or his assigns."

It will thus be seen that the revisors returned to what we conceive to have been the common-law, and determined that while the widow, while compelled by this act to take dower in money instead of land, if the alienee so elected, yet the value of her annuity was to be estimated by recurring to the period of her *husband's death*.    Neither was the alienee, under this section, compellable to tender nor the

widow to receive a sum of money in gross, though she was compelled to accept an annuity if the alienee so elected.

Upon turning to our own act we find some important departures from the law, as established, up to the period of the war, by the Code of Virginia. In our act the clause requiring the alienee to resort to a court of equity, to relieve him from the action or demand of the widow for dower in kind, simply says that the alienee *"may* pay to the widow," *etc.* Another important change is that we have gone back in this section to the principle established in *Tod* v. *Baylor, supra,* that the value of the dower, when commuted, should be estimated as at the time of the alienation or sale, and not as at the time of the death of the husband. A third and important change is that the alienee shall not be *compelled* to pay the widow an annuity, as formerly, but *may* pay her a gross sum in lieu thereof, computed in accordance with the annuity-table embodied in a subsequent section of the same act. Code 1868, c. 65, s. 17.

Up to this point, therefore, the law is perfectly plain, and not open to any question.

In the present case, however, the widow in her bill prays "that her dower in her said real estate be assigned, set out and allotted her, or a gross sum in lieu thereof given her." It seems, therefore, that the widow was quite willing to take the dower in land or in money at the election of the court, and presumably at the election of the alienee, so far as the law entitled him to any option in the premises. In the answer of the alienee she insists upon her right to have the dower assigned to the widow in kind, that is, in land; and the plaintiff having already prayed for similar relief, and having filed no replication to the answer, and having, so far as the record discloses, nowhere expressed any dissent to this mode of assignment, it is difficult to understand why the Circuit Court should have insisted in the face of her prayer and against the protest of the alienee, upon decreeing her a gross sum, commuted apparently upon wrong principles, and made a charge upon the whole property of which the husband had died seised. It is hardly necessary to say that the decree was erroneous, and must be reversed.

There is a further question, the decision of which is important, although in the state of the pleadings in this case it is not necessarily involved. That question is whether upon a proper construction of our act, the alienee can at his election compel the widow to receive a commutation of a gross sum, or an annuity, against her protest; while she, on the other hand, can not compel him to commute her dower without his consent.

Upon a careful examination of our own act and the act of Virginia, it is to my mind quite apparent that our legislature did not intend by changing the phraseology in this respect to change the principle of the Virginia act, which declared that the alienee might seek relief through a court of equity from a recovery of dower in kind. It is quite apparent that the alienee need not resort to a court of equity under that act, unless he elects so to do, and in our act the substituted expression, "may pay the widow," was intended to leave the matter optional with the alienee, just as it was before.

If, therefore, the alienee remain quiescent, the widow recovers dower, under the eleventh section of the act, in kind, just as the property stands when the recovery is had, and she under the law has no power whatever to force the alienee to pay her the commuted annuity, or a gross sum in lieu thereof.

It has been supposed by counsel that the seventeenth section of the act renders this construction doubtful; but upon examination it will be found that that section was intended simply to prescribe the method of computation by which should be commuted annuities or gross sums in lieu thereof, and was not intended in the least to modify the construction of the preceding sections.

In the leading case of *White* v. *White*, 16 Gratt. 264, it was held that, under chapter 124 of the Code of Virginia, the widow could not be compelled to receive a gross sum in lieu of her dower. But this, it will be observed, was a case in which the husband *died seised*, and not a case coming under section 12 of the Virginia act, from which, as we have seen, ours is taken.

So, also, in *Blair* v. *Thompson*, 11 Gratt. 441, it is said

and held that "there can not be a decree for a specific sum in lieu of dower, without the assent of all the parties interested." But it will be observed that, although that opinion was rendered in 1854, after the Code of 1849 went into effect, all the rights of the parties had accrued and were to be adjudicated by the principles of law as the same existed, before section 12 was enacted.

Upon the other hand, in the case of *Stimson* v. *Thorn*, 25 Gratt. 278, it was held that the widow, where the husband aliened during his lifetime, could be compelled, under section 12 of chapter 106, to receive a gross sum. There is nothing said about this in the syllabus of the case, but I draw the inference from what is said in the opinion on page 285.

At all events, the language of our own statute is too plain to admit of a doubt and leaves no room to question that, whereas, if the husband died *seised*, the widow can not be compelled to receive a compensation in money in lieu of dower, unless it is impossible to assign her dower in the real estate *in specie;* upon the other hand, it is equally certain that, where the husband has sold the property in his lifetime, the value of her dower, if commuted, is to be computed as against the alienee at the date of the alienation with lawful interest from her demand; but she can not insist that her dower shall be assigned *in specie*, nor can she refuse to receive a gross sum or an equivalent annuity; the option in this matter being lodged by the statute exclusively with the alienee. The value of the dower, if assigned *in specie*, is to be estimated at the time of the recovery, and the damages by way of interest are to be computed from the time the demand was made upon the alienee by the widow or her agent.

The decree of the Circuit Court must be reversed, and dower in kind assigned the plaintiff in the land, just as it stood at the time the decree of the Circuit Court was entered, and the interest on the value of such dower must be computed from the time of the institution of her suit.

Reversed.